# Dooley *et al. v.* Villalonga.

*Bill in Equity to foreclose Mortgage.*

1. *Homestead; wife's assent to alienation of; what sufficient.*—The constitutional requirement as to the alienation of the homestead, owned by a married man, is satisfied, if the wife gives her "voluntary signature and assent" to the husband's conveyance, though she is not named as a grantor therein, and does in terms convey anything.

2. *Same.*—Though the husband alone bargains, sells, and conveys, as grantor in a mortgage, yet if the power of sale therein proceeds from both husband and wife, and vests the mortgagee with full power to sell the lands on default of payment, &c., and the wife voluntarily signs and assents to the conveyance,—this is a compliance with the constitution, and will pass title to a homestead, owned by the husband.

3. *Material defendant, to bill for foreclosure.*—Under our laws relative to the transmission and descent of realty, and the enlarged power of the chancery court in foreclosure suits,—which are widely different from the English laws and practice,—the personal representative of a deceased mortgagor is a material defendant to a bill for foreclosure; and the omission is fatal to the decree, and will be noticed *ex mero motu* by the appellate court.

4. *Omission to make administrator a party; what does not cure.*—When

no reason is shown why the administrator is not made a party, the appointment of an administrator *ad litem* will not cure the defect.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

This was a bill in equity filed by the appellee, Villalonga, against the widow and children of John Dooley, to foreclose a mortgage executed by deceased in his life-time on certain premises in the city of Mobile. The execution of the mortgage was duly acknowledged by Dooley and his wife, before a justice of the peace, who certified the same in the form prescribed by the Code. The terms of this instrument are set forth in the opinion. The chancellor decreed that complainant was entitled to relief, and upon the coming in of the report, ascertaining the amount of the debt, it was confirmed, and a sale of the premises decreed, &c. This decree is now assigned as error.

JOHN LITTLE SMITH, for appellant.—The deed contains no words of assent, or of release, or of conveyance by the wife. She is not a party to the conveyance at all. " A deed can not bind a party sealing it, unless it contains words expressing an intention to be bound."—3 Mason, 258; 9 Mass. 218; 4 Howard, 225; *Leavitt v. Lampsey*, 13 Pick. 382; *Lafkin v. Curtis*, 13 Mass. 223. This doctrine has been approved and followed here.—*Harrison v. Simons*, 55 Ala. 570.

2. The appellee seeks to glean an assent to the conveyance, from the power of sale at the foot of the mortgage, in which the name of the wife is recited. The power of sale in a mortgage is in the nature of a conventional remedy made by the parties to cut off the equity of redemption of the mortgagor, and is a power to sell the estate conveyed to the mortgagee without a day in court. It is a power to sell the estate conveyed. If no estate is conveyed, the power fails. It is a power appendant, annexed to and dependent upon the estate vested in the mortgagee.

" A power of sale is a power coupled with an interest, and it seems a power appendant."—11 Paige, 619, cited in note on page 101 of Hilliard on Mortgages. " These powers fall under the class of powers appendant or annexed to the estate." 4 Kent's Comm. 14. The power of sale in a mortgage is to be construed rigidly. It applies only to the remedy, and does not impair any right of the mortgagor.—2 Cowen, 195; 7 Johns. Ch. 25; 1 Hilliard on Mortgages, 90. The power only confers the authority to sell the estate conveyed to the

[Dooley v. Villalonga.]

mortgagee. The wife could join in the power, without consenting to the conveyance, knowing it had no field of operating, because the conveyance of her husband was of no validity to grant away the homestead.—3 Pick. 490.

3. The donee of such powers can never bring them into court for execution, or to remedy any defect in the power. When he asks the aid of a court to foreclose his mortgage, he stands upon the conveyance to him, and the power has no existence in the eyes of the court. Courts of equity view these powers to sell with great jealousy, and never lend their aid to carry them into execution. The right of homestead is claimed by the infant children of John Dooley, deceased. As they do not claim through Mrs. Dooley, nothing can be urged against them by way of estoppel. They claim the right to retain the homestead, and this right can not be defeated except by a strict compliance with the constitution.

STEWART & PILLANS, for appellee.—Aside from her dower interest, which is not involved, the widow had no estate, right or title in the mortgaged premises. They belonged to the husband, and he *conveyed.* The wife had nothing to convey. She affixed her signature, and acknowledged that she did so voluntarily. This satisfies the constitution which required, not a conveyance, but her " voluntary signature and assent."—*Miller v. Marx,* 53 Ala. The power of sale— that which would cut off and destroy the husband's estate—was joined in by the wife. She did so voluntarily, and her act can mean nothing less than that she assented to the conveyance. If it has not this effect, some of the most vital portions of the instrument will be rendered nugatory. All parts must have effect, if consistent with the rules of law, and not forbidden by other portions of the instrument. 10 Mod. 47; 2 Howard (U. S.) 266; 38 N. H. 29; 2 Porter, 54.

MANNING, J.—Appellants are the widow and children of John Dooley, deceased, who in 1871, made a mortgage of the property constituting his homestead, to appellee Villalonga, as a security for borrowed money. Dooley and wife both signed the instrument and acknowledged in due form of law, the execution of it by them. This suit is for foreclosure; and appellants deny that the deed is effectual against their right of homestead. The property belonged to John Dooley to whom individually it had been conveyed; and he alone according to the terms of the instrument, as grantor, bargained, sold and conveyed the land, in mortgage, to Vil-

[Dooley v. Villalonga.]

lalonga. But the power of sale with which the instrument concludes, begins as follows: " And the said John Dooley and Jane Dooley, his wife, do hereby vest the said Michael Villalonga, his heirs and assigns, with full power and authority, upon default in the payment of the note above described, to sell out all interest in the said above described premises," &c.

It is ingeniously contended—(first)—That Mrs. Dooley's signature does not make her a grantor of the property with her husband in the conveyance of it; and several cases are cited to support this proposition;—*Harrison v. Simons*, 55 Ala. 510; *Agricul. Bank v. Rice*, 4 How. (U. S.) 225; *Catlin v. Ware*, 9 Mass. 218; *Powell v. Monson*, 3 Mason, 348; *Leavitt v. Lampsey*, 13 Pick. 382; *Lafkin v. Curtis*, 13 Mass. 223; and, (secondly,) that the power of sale which she joined in granting, was a power appendant—annexed to the estate acquired by the mortgagee,—and could not operate beyond it on anything else, and that since she did not join her husband in conveying her homestead property, the mortgagee had no estate in it in respect of which the power to sell, could be executed.

But, to this the answer is:—The title to the property was in the husband only, and so was the right of homestead. His deed, if validly made, would convey the title; and the only ground of invalidity alleged is supposed to exist in the constitutional clause which declares that the " mortgage or other alienation of such homestead, by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife thereto." It is not a conveyance by her that is required, but her " voluntary signature and assent," to the conveyance of her husband. And we think this provision is complied with, when in the body of the deed made by her husband, she voluntarily, expressly, and in conjunction with him, vests the mortgagee " his heirs and assigns with full power and authority upon default in the payment of the note  .  .  to sell out all the interest in the premises described,"—and adds her signature to the instrument.

There is however an omission of a material party. No reason is shown why an administrator of John Dooley's estate was not made a defendant. True, according to some of the books, that would seem not to be necessary in such a case.—Story's Eq. Pl. §§ 175, 196 and notes. This is an exception to a general rule, and was derived from a note of Mr. Cox to *Knight v. Knight*, (3 P. Wms. 333) in which the reason for the ruling, assigned by the master of rolls, is—

[Dooley v. Villalonga.]

"because the bill being *only to foreclose the equity*, the plaintiff need only make him a party that has the equity, (viz:) the heir."

It was common, in that day, to file a bill not for a sale of the mortgaged property, but for a foreclosure of the equity of redemption only, with the intent to perfect thereby the title of the mortgagee as owner, and quiet his right to the land. But in our practice this is very rare. The land is sold to pay the mortgage debt; and if after the proceeds are so used, the debt is not fully paid, the administrator is chargeable with the residue. Hence it was held in *Wilkins v. Wilkins* (4 Por. 245), that the administrator of the deceased debtor was "certainly an essential party as representing the personal estate. It would be his duty to prevent a recovery for a larger sum than was due upon the mortgage, inasmuch as the assets in his hands would be liable to pay so much as might be unsatisfied by a sale of the mortgaged property."

With this a passage in *Inge v. Boardman*, (2 Ala. 331) appears to be in conflict. But the conclusion goes beyond the premises. Construed with the facts of the case, the decision is simply this:—when it is shown that the administrator and the estate in his hands are discharged from the mortgage-debt,—as when it is barred as against them under the statute of non-claim, by failure to present it,—then it is not necessary to make the administrator a party.

Moreover, in England, real estate, whether under mortgage or not, was not liable to be subjected, as it is by our law, to administration as assets of the estate of a deceased person. If by any specialty the former owner of lands there, bound his heirs to the discharge of a debt contracted by him, the heir was directly suable at law, on account of the estate descended; in which the administrator as such, could never have any interest. But as the real estate may, by our law, and generally is brought under his administration, duties in respect to it, are cast upon him; and it is highly proper that a mortgagee filing a bill to sell lands to pay a mortgage debt, should be required to make the administrator a party, that he may see to it that property in which his interest may be greater than that of the heirs, is not unduly subjected to diminution. In Alabama, it has for many years, been the uniform practice in suits of this kind, for the mortgagee to make the admistrator of the mortgagor a party, unless it be shown that he has no interest therein.

In the present case we observe, that what is called in the statute an administrator *ad litem* was appointed, in the pro-

gress of the cause. Perhaps, if the true administrator were a party and interested adversely to the estate of the debtor, a representative *ad litem*, acting under the eye of the chancellor might have been allowable. But an administrator *ad litem* gives no bond, can not receive a dollar of the assets of the estate, has no access to the vouchers or other papers of the deceased, must be wholly uninformed in regard to his indebtedness, and in fact, be deprived both of power to be useful and of responsibility. The law will not commit the interests of the estate to a mere man of straw, when no reason is shown why a real administrator should not be made a party.

The absence from a cause of a material party to it, is a defect of which this court will *ex mero motu* take notice. *Prout v. Hoge,* 57 Ala. 28; *Goodman v. Benham,* 16 Ala. 225.

Let the decree be reversed and the cause remanded.

